**Keith ABEL, Petitioner,**

v.

**Donald W. WYRICK, Respondent.**

**No. 60227.**

Supreme Court of Missouri,
En Banc.

Dec. 18, 1978.

---

C. Christy Barton, Jefferson City, for petitioner.

John D. Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

This is a habeas corpus proceeding in which petitioner claims that he is being illegally confined because of failure to afford him his due process rights at his probation revocation hearing. This court has jurisdiction and venue, as will be gone into below. The major issues for our consideration on the merits are whether (1) failure to notify petitioner of the violations to be charged against him prior to hearing violated his due process rights, in light of his admission that he committed the violations; (2) whether the trial judge considered, and if not, should have considered, alternatives to incarceration once petitioner admitted the violation of conditions of his probation, including the question whether petitioner was afforded an opportunity to present evidence on this issue; (3) whether the petitioner should have been informed of his right to request an attorney to represent him at the hearing; and (4) whether the hearing judge was required to indicate his reasons for revocation in the formal revocation order itself.

The facts are fairly straightforward. On May 5, 1975, petitioner was convicted of second degree burglary and stealing, for which he was sentenced to consecutive terms of three years and two years, respectively. Execution of both sentences was suspended and petitioner was placed on five years probation under the supervision of the State Board of Probation and Parole. The conditions of probation imposed included the following:

"(1) I shall obey all laws and ordinances of the United States, State, County or municipality. All arrests for any reason must be reported without delay to my probation and parole officer.

(2) I shall obtain advance permission from my probation and parole officer before leaving the state or the area in which I am living. The probation and parole officer is authorized to determine this area.

. . . . .

(9) Special conditions . . . Abstain completely from use of all alcohol and do not frequent any establishment where alcohol is offered for sale."

Abel was arrested for driving while intoxicated sometime prior to October 7, 1976, as a consequence of which he was convicted of public drunkenness, paid a fine of $25.00 and was admitted to the Mid-Missouri Mental Health Clinic. Upon his release from the clinic on October 25, 1976, he entered Phoenix House, a halfway house, on condition that he do no more drinking. His probation violation report states that he left Phoenix House that day without proper permission and visited a number of people in out-state Missouri. He tried to report to his probation officer by telephone the next day, but was unsuccessful, and the following day he returned to Phoenix House, where he was arrested for leaving the area without the permission of his probation officer.

On December 6, 1976 a hearing was held in Gasconade County Circuit Court on the allegations that petitioner had violated certain conditions of his probation, in particular conditions 1, 2, and 9, *supra*. Petitioner claims that he received no written notice of the alleged violations of his probation, other than of condition 2, prior to the hearing itself. Respondent counters this assertion with the argument that the hearing officer signed an affidavit to the effect that he directed a copy of his report, which listed the violations, be sent petitioner. Parenthetically, we point out that such an affidavit is not sufficient evidence that the report was actually received even to make the question of receipt a debatable one. Such proof would require either proof of proper mailing, *Price v. Ford Motor Credit Co.*, 530 S.W.2d 249, 250 (Mo.App.1975), or proof of the chain of handling of the report to show that by following normal business custom a direction that a report be sent to a probationer would result in its proper mailing. *See, e. g., First National Bank of Independence v. Mid-Century Ins. Co.*, 559 S.W.2d 50, 52 (Mo.App.1977); *Armour and Co. v. American Automobile Ins. Co.*, 336 Mo. 551, 80 S.W.2d 685, 688–90 (1935). Here the probation officer's statement that he had directed the report be sent petitioner does not afford any basis for finding that petitioner received the report in the face of his contention that he did not receive it. We thus proceed on the basis that no report, and thus no notice, of the charges that petitioner had violated conditions 1 and 9 of his probation was received by petitioner.

Petitioner appeared in person at the hearing. The judge asked petitioner if he was represented by an attorney, to which petitioner replied "No, sir, I can't afford one, in the first place." Petitioner was not informed that he had a right to at least request a lawyer be appointed and no further inquiry was made into whether petitioner desired a lawyer, or whether a lawyer was necessary in his case.

Petitioner admitted violation of conditions of parole 1 and 9, failure to report an arrest and use of alcohol, but did not admit violation of condition 2, leaving the area without authorization, the only claimed violation of which he had written notice prior to the hearing. The judge permitted some explanatory remarks by petitioner, but re-

fused to permit petitioner to read a statement which he had prepared, apparently by way of explanation of his actions. The judge concluded that, as petitioner had violated the conditions of his probation, the court would revoke probation. Therefore on December 6, 1976, the judge ordered petitioner's probation revoked and ordered him to serve the sentences imposed on May 5, 1975.

■ On June 17, 1977, petitioner filed a *pro se* petition for a writ of habeas corpus in this court, alleging that his probation had been revoked illegally because he had not been given credit on his sentence for probation time served and because the court failed to make written findings of the reasons for the probation revocation. On July 11, 1977, this court ordered respondent to show cause why a writ of habeas corpus should not issue, and on October 3, 1977, a preliminary writ issued from this court. In his reply, petitioner dropped his claim for probation time and instead alleged that the violations of due process noted at the outset of this opinion and gone into below had occurred, thus invalidating his probation revocation hearing and necessitating his release under the standards set out in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).[1] Before we turn to a consideration of these claims, two additional issues raised by respondent must be dealt with.

## I.

A. In his jurisdictional statement, respondent asserts that, pursuant to rule 91.-59, a petition for habeas corpus should be filed in the first instance in the circuit court for the county in which the prisoner is confined.[2] This argument was rejected by the court of appeals, Kansas City district, in *Reiter v. Camp,* 518 S.W.2d 82, 84 (Mo.App. 1974), on the grounds that (1) rule 84.22, which provides that no original remedial writs, except habeas corpus, will be issued by an appellate court where an adequate remedy could be had by filing in a lower court in the first instance,[3] and (2) *Ex parte McCarter v. Hinton,* 434 S.W.2d 14, 16 (Mo. App.1968) and *Ex parte Hagan,* 295 Mo. 435, 245 S.W. 336, 337 (Mo. banc 1922), which hold that "constitutional authority to issue and determine *habeas corpus* proceedings cannot be diminished or curtailed by legislative enactment", *Reiter v. Camp,* 518 S.W.2d at 84, support the jurisdiction of appellate courts to determine writs of habeas corpus in the first instance.

Respondent contends that *Ex parte Carter* and *Ex parte Hagan* refer only to *legislative* actions to curtail habeas corpus, not to judicial action pursuant to Supreme Court rule, and that in any case, any implication in *Reiter* that a venue rule for the filing of a writ of habeas corpus would unconstitutionally suspend the writ can no longer be the law in light of this court's decision in *Wiglesworth v. Wyrick,* 531 S.W.2d 713 (Mo. banc 1976), that rule 27.26 does not unconstitutionally suspend the writ of habeas corpus. Finally, respondent asserts that rule 91.59 and rule 84.22 can be harmonized; that is, that rule 84.22 simply excepts habeas corpus from its provisions and does not mandate where it can or cannot be filed, but that rule 91.59 supplements rule 84.22 by requiring writs of habeas corpus to be filed in the circuit court of the county in which a petitioner is incarcerated.

1. In general, in habeas corpus the issues are framed by the return and the traverse by way of reply. *Ryan v. Wyrick,* 518 S.W.2d 89, 91 (Mo.App.1974).

2. Rule 91.59 provides, in part, as follows:
 Application to What Court First Made
 When a person who is held in custody on a charge of crime or misdemeanor applies for the benefit of Rule 91 his application, in the first instance, shall be to the judge of the circuit court for the county in which the applicant is held in custody, if at the time of the application, such judge be in the county . . . ."

3. Rule 84.22 provides as follows:
 Granting original writs
 No original remedial writ, except habeas corpus, will be issued by an appellate court in any case wherein adequate relief can be afforded by appeal or by application for such writ to a lower court.

*Wiglesworth* did hold that rule 27.26 goes to venue, not jurisdiction, and therefore does not suspend the writ of habeas corpus. It may be that a similar rule requiring that venue for determining a writ of habeas corpus, in the first instance, would also be found constitutional through application of the principles enunciated in *Wiglesworth.* However, no such requirement now exists as a mandatory rule. While it would be more expeditious, and therefore more advantageous, in most instances, for a petition for a writ of habeas corpus to be made first to the circuit court in cases in which there is a dispute as to a factual issue, no rule requires that such a petition be first filed therein. In a case in which factual issues are in dispute, this court may refer the matter to a circuit court for determination of fact issues or may appoint a master who will hold a hearing on the evidentiary questions and, in either event, the findings can then be certified to this court. Rule 91.59 does not require a different result. Even if it can be said to supplement rule 84.22 in the manner asserted by respondent, by its terms rule 91.59 applies only to an application for a writ of habeas corpus which is filed by "a person who is held in custody on a charge of crime or misdemeanor." Petitioner herein is held on the basis of a conviction, not on the basis of a "charge of crime", as would be a person awaiting trial. Respondent's arguments that if someone is convicted he was necessarily charged with a crime, and that a probation revocation is not a conviction and therefore must be a charge of crime, overlook the fact that petitioner is being confined on the basis of his conviction, not on the basis of the original charge of a crime or on the basis of his probation revocation. The latter merely removed the obstacle to execution of the sentence assessed on the basis of his conviction. It cannot in itself form the basis of confinement unless there is a sentence which takes effect as a result of the probation revocation.

Thus, while a petition for a writ of habeas corpus *should* be filed in the circuit court in the first instance in cases in which factual issues are in dispute, *see McIntosh v. Haynes,* 545 S.W.2d 647, 653 (Mo. banc 1977), nothing requires that such a writ be filed therein. This court has jurisdiction to issue the writ and it is properly filed here.

B. As a second procedural issue, respondent contends that the petition should be dismissed because the points relied on are conclusory and do not meet the requirements of rule 84.04. Respondent's complaint has some merit. However, this court prefers not to dismiss on a technical point unless it is compelled to do so, particularly in a habeas corpus proceeding such as this one in which federal constitutional violations are alleged. *Cf. State v. Reynolds,* 422 S.W.2d 278 (Mo.1967). As will be gone into below, petitioner's due process rights were in fact violated. Inasmuch as rule 91.05 makes it the duty of this and every other court to issue a writ of habeas corpus for any person, regardless whether application for such a writ is presented, where there is evidence from judicial proceedings before it that a person is illegally confined, we cannot, in conformity with rule 91.05, dismiss the suit at this juncture.

## II.

We now address the merits of petitioner's claim.

The basic constitutional requirements for a probation revocation hearing have been set out by the Supreme Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which applies the standards for parole revocation hearings enunciated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) to probation revocation hearings, and adds the additional requirement that a probationer will sometimes have a right to representation by counsel. The *Morrissey* and *Gagnon* standards have been adopted by the St. Louis and Kansas City Courts of appeals, *Moore v. Stamps,* 507 S.W.2d 939 (Mo.App.1974); *Brandt v. Percich,* 507 S.W.2d 951 (Mo.App.1974); *Reiter v. Camp,* 518 S.W.2d 82 (Mo.App.1974); *Ryan v. Wyrick,* 518 S.W.2d 89 (Mo.App.1974), with the

modification that, particularly in light of the fact that in Missouri probation revocation is conducted by a judicial officer, and not an administrative board, one hearing rather than both a preliminary and a final revocation hearing may be held if it is afforded within a reasonable time and contains all the due process requirements for a final hearing. *Ewing v. Wyrick*, 535 S.W.2d 442, 444 (Mo. banc 1976). As modified, the minimum requirements of due process, as set out in *Gagnon* and *Morrissey*, which must thus apply to probation revocation in Missouri, are:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey v. Brewer, supra*, at 489, 92 S.Ct. at 2604." *Gagnon*, 411 U.S. at 786, 93 S.Ct. at 1762.

It is in light of these standards that we consider petitioner's allegations of a violation of his due process rights in the conduct of his probation revocation hearing.

### III.

 Two basic types of errors are alleged. The first goes to notice. Petitioner claims that he did not receive written notice of the charges which were to be brought against him at the hearing and thus did not have adequate time to prepare a defense. Since he admitted that he had committed the violations, and makes no claim of involuntariness in admitting them, the lack of notice is harmless as to the first determination to be made at a probation revocation

hearing—did the violations occur. However, a probation revocation hearing is a two-part procedure. If it is determined that a probationer did violate the conditions of his probation, the hearing officer, or, in Missouri, the judge, must then make a determination as to whether probation should be revoked as a result thereof or whether some other less drastic alternative should be invoked. *Morrissey*, 408 U.S. at 478–80, 92 S.Ct. 2593; *Gagnon* 411 U.S. at 784, 93 S.Ct. 1756.[4] It is here that the lack of notice to petitioner becomes relevant. Without notice, both of the nature of the charges and of the evidence to be presented against him, petitioner could not effectively prepare an explanation of the reasons for his actions and of any extenuating circumstances. Even though he admitted commission of the violations, he was entitled to notice of the violations alleged and of the evidence against him, and to an opportunity to be meaningfully heard, to present witnesses and documentary evidence and to confront adverse witnesses. These rights are just as important to the second as to the first stage of the probation revocation hearing, for they would bear on the appropriate level of discipline to be imposed. Without notice that alcohol-related problems were to be raised at the hearing, petitioner had no opportunity to bring in witnesses who could testify as to the circumstances of his use of alcohol, to support in the community to aid him in rehabilitation, or to the existence of treatment programs which would be beneficial in his case. This is not a situation in which the alleged violation was commission of a major crime, or a crime similar to that for which the probationer was originally convicted, but rather is a violation due to a personal problem of alcohol abuse. As such, alternative treatments were certainly sufficiently appropriate to be entitled to some consideration. Without notice of the alleged violations, petitioner did not have an opportunity to demonstrate what alternatives might be available.

 Respondent contends that the judge clearly indicated that he felt petitioner's

---

4. This requirement will be discussed in greater detail *infra.*

violations were very serious, that he would not have been influenced by further explanations, and thus that any defects in notice or hearing were harmless under the standards of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Standlee v. Rhay,* 557 F.2d 1303, 1307–08 (9th Cir. 1977). The propriety of this action by the judge will be gone into below. Here we simply note that respondent has misapprehended the meaning of *Chapman* and *Rhay. Chapman* does not require a defendant to show that he was prejudiced by a violation of the law, but rather provides that error of a constitutional magnitude may be ignored where, but only where, "the court [is] able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. The burden is thus on the state to show that the defects in notice and hearing were harmless, not on the petitioner to show that they were not. *Id. Rhay* does not hold to the contrary. Rather, in *Rhay* the ninth circuit found that, since the Supreme Court had indicated in *Gagnon,* 411 U.S. at 782 n.5, 93 S.Ct. 1756, that use of a transcript rather than the calling of witnesses would be permissible, the right to confront live witnesses was not a basic due process right in the context of a probation revocation hearing and thus the probationer had the burden of showing that prejudice resulted from use of a transcript only. 557 F.2d at 1307–08. *Rhay* has no relevance where the petitioner alleges violation of the rights of notice, disclosure of evidence and the right to be meaningfully heard and to present witnesses, due process rights declared by the Supreme Court to be minimum requirements of due process. *Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756. In the absence of a showing by the state that even if petitioner had had proper notice he would not have been better able to explain mitigating circumstances and present alternative remedies, it could not meet its burden of showing lack of prejudice as a result of those violations.

The state contends, as noted above, that the transcript of the hearing does show that no prejudice resulted, since the judge clearly indicated that he would not consider any explanations. However, as gone into below, the judge was required to consider petitioner's evidence and to consider alternatives to incarceration. If he did not do so, he did not comply with the due process requirements set out in *Morrissey* and *Gagnon.* Respondent cannot rely on an additional failure to follow these due process standards in order to justify its own failure to follow other such standards. No showing that the error was harmless has been made.

## IV.

We now reach the question whether petitioner was in fact afforded the second step of the revocation hearing guaranteed him under *Gagnon*—the consideration of alternative responses to the probation violations found. We find that he was not.

In *Gagnon,* the Supreme Court noted: " 'The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?' " *Gagnon* at 784, 93 S.Ct. at 1760, quoting *Morrissey* 408 U.S. at 479–80, 92 S.Ct. 2593.

Of course, the court in *Gagnon* was here referring to what steps must be taken in an administrative determination of probation revocation, not a judicial one. However, the same principles apply. *Accord, Moore v. Stamps,* 507 S.W.2d at 949–50. The mere fact of violation of parole or probation conditions alone should not automatically lead to revocation, without consideration of alternative remedies. That the court felt such alternatives workable and important is made clear in *Gagnon,* 411 U.S. at 787–88, 93 S.Ct. 1756, where it rejects making representation by counsel a universal requirement of a revocation hearing partly because

to do so would make the hearing more akin to a trial and thus "the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation." *Gagnon* at 788, 93 S.Ct. at 1762.

Although in many cases no workable alternatives to incarceration may present themselves, as where a probationer previously convicted of burglary has again committed the same or a similar offense, other alternatives were certainly worthy of consideration here. The court could have considered an Alcoholics Anonymous program, counselling, a half-way house specializing in alcohol-related problems, and other similar avenues of help. Of course, the judge, in his discretion, may have concluded, after weighing the alternatives, that none would be appropriate and that incarceration was the only realistic alternative. But at least more than a cursory consideration of alternatives is required. Here, the judge stated, "Well, there doesn't seem any need to have a hearing on whether you violated your probation if you are admitting you violated it." He later refused to permit petitioner to offer a statement as to the reasons for his violations, stating: "The only thing I'm interested in is what you have told me; you violated your probation. There's no use wasting any more time, I'm going to revoke your probation. What they do with you up at the institution, I don't know. But a rule is a rule . . . ."

It is clear that the judge did not consider alternatives to incarceration or the relative benefits of incarceration to petitioner and to society, as opposed to the benefits of some alternative treatment, but simply decided to incarcerate on the basis of the broken conditions of probation themselves. On these facts, this was an abuse of discretion. The judge at a probation revocation hearing must allow a probationer a meaningful opportunity to present his evidence, and must consider that evidence. Here, it is clear that the explanations given by petitioner for his drinking were not considered in determining whether or not to revoke probation, and that the documentary evidence offered was not even permitted to become a part of the record because of the judge's apparent decision not to consider it regardless of its content. As such, petitioner's due process right to a meaningful opportunity to present his evidence was denied him.

We thus conclude that (1) petitioner was unconstitutionally deprived of notice of the nature of the charges against him and of the evidence to be presented against him, and that the state has not met its burden of showing that no prejudice thereby resulted to petitioner's ability and right to present evidence in his defense and to explain the circumstances of his actions and suggest alternatives to incarceration, and (2) the court was incorrect in excluding documentary evidence by petitioner and in not considering petitioner's explanation for his actions simply because the court felt that this evidence was irrelevant once petitioner had admitted the violations. The judge was required to give petitioner an opportunity to be heard on the question of the remedy for the violations of probation as well as on the question of whether the violation itself had occurred. Only after this second inquiry could the judge, in his discretion, make a decision as to whether incarceration or some alternative treatment was most appropriate. For these reasons, we conclude that petitioner must be remanded to the sheriff's custody either for restoration to his status as a probationer and release from custody, if so advised, or for a new hearing at which the proper standards are to be observed, including written notice of the charges and an opportunity to present evidence as to alternatives to incarceration. In light of the fact that upon remand there may be a new probation revocation hearing, we will address the two remaining issues raised by petitioner.

V.

Petitioner also complains that he was not accorded a right to counsel, and that his case is one in which such representation would have been appropriate. We cannot say whether or not counsel was necessary.

The fact of violation is quite simple. However, counsel may have proved useful in explaining mitigating circumstances or in searching out alternatives to incarceration.

In this case, the judge not only did not give consideration to whether or not petitioner needed counsel, he did not inform petitioner that he had a right to request that counsel be appointed. *See Gagnon* at 790, 93 S.Ct. 1756. The respondent would have us hold that under these facts, even if petitioner had requested counsel, it would not have been error to deny him counsel and therefore no prejudice resulted. However, the question is not whether it would have been error not to appoint counsel, but whether it was error not to inform defendant of his right to counsel and to consider whether counsel would have been appropriate in this case. The respondent himself cites substantially the following language of *Gagnon,* 411 U.S. at 790–91, 93 S.Ct. at 1763–64:

"[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."

The failure to consider whether petitioner had a due process right to representation at the hearing denied him the opportunity to assert that right. While in most cases in which violations are admitted no counsel will be necessary, counsel may be necessary in some instances to explain the circumstances of the violations if they are shown to be complex, or to suggest alternative treatments especially where, as here, the violations did not themselves involve the commission of another serious crime. Upon remand, if a new hearing is held, petitioner is to be informed of his right to request counsel and if he does so request, a determination must be made as to whether counsel is necessary in his case in order to protect his due process rights. If the judge determines that counsel is not necessary, he should state the grounds for his decision clearly in the record.

Petitioner's final contention is that because no written statement of the reasons for revocation and the evidence relied on was made, his due process rights were violated. It is true that the formal revocation order did not state these facts. However, as the court of appeals held in *Ryan v. Wyrick,* 518 S.W.2d at 94, if the record of the proceeding clearly shows what reasoning and evidence were relied upon to revoke probation, the due process rights of the probationer are satisfied. Here the record

made clear that petitioner's probation had been revoked for violation of condition 9 of his probation, use of alcohol. Since the petitioner has thus been informed of the reasons for the revocation and since the sufficiency of these reasons and the evidence supporting them are preserved for appellate review in the transcript of the hearing, no prejudice resulted and no due process right has been violated, although the better and safer practice is to set out a short statement of the reasons for revocation and the basis for those reasons in the formal revocation order itself.

Petitioner is ordered released from the custody of the respondent and further ordered remanded to the custody of the sheriff of Gasconade County and is restored to his status as a probationer being held under custody pending a hearing or other disposition of the allegations that he has violated the conditions of his probation agreement, any such hearing to be conducted upon notice and in accord with the foregoing opinion.

MORGAN, C. J., BARDGETT, FINCH, DONNELLY and RENDLEN, JJ., and SOMERVILLE, Special Judge, concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.