567 F.Supp. 882 (1983)
Nicholas James ROMANO, Petitioner,
v.
Dr. Lee Roy BLACK, and Dick D. Moore, Respondents.
No. 82-1803C(4).
United States District Court, E.D. Missouri, E.D.
June 20, 1983.
*883 Jordan B. Cherrick, St. Louis, Mo., for petitioner.
John C. Reed, Asst. Atty. Gen., Jefferson City, Mo., for respondents.

MEMORANDUM
CAHILL, District Judge.
This matter is before the Court on Nicholas James Romano's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Romano claims in his petition that the Honorable Dean Whipple, a Missouri state judge in Laclede County, Missouri, abused his discretion by revoking Romano's probation. Romano alleges two points of error. Romano first alleges that Judge Whipple violated his rights of due process under the Fourteenth Amendment to the United States Constitution when he revoked Romano's probation without considering alternatives to incarceration. Secondly, Romano claims that Judge Whipple violated his due process rights by allowing the material testimony of Jody Seificas, a witness at Romano's probation revocation hearing, in violation of the witness' right against self-incrimination.

I
In November, 1976, Romano pleaded guilty to two counts of an indictment that charged him with transferring and selling a controlled substance. In April, 1977, Judge Whipple sentenced Romano to two concurrent twenty year terms of imprisonment but suspended execution of the sentence and placed him on probation for a period of five years. Romano had been on probation for about three months when Judge Whipple revoked his probation and ordered Romano to begin serving the twenty year prison term. However, Romano was later paroled after serving five and one-half years in jail. Romano still maintains that the revocation of his probation was improper and seeks release from the custody of the Missouri Department of Probation and Parole. The Court recognized that there was insufficient basis in the record upon which to render an informed decision on Romano's habeas petition. So, the Court held an evidentiary hearing to allow the parties to adduce additional evidence and testimony on this matter. The parties chose not to present testimony and relied solely on the attorneys' oral argument. For the reasons discussed below, Romano's petition for writ of habeas corpus is granted.
Along with the generally accepted conditions of probation, Judge Whipple placed Romano on probation with three special conditions: (1) Romano had to submit to a drug screen test on demand, (2) his travel was restricted to Boone County, Missouri, unless he obtained prior permission to travel elsewhere, and (3) Romano had to allow any law enforcement officer to search his personal property at any time. (Tr. at 49, 50.) The record is clear that Judge Whipple placed Romano on probation despite the contrary recommendation of the State and the presentence investigation report. But, Judge Whipple stated to Romano that
If ... it is proven that you did refuse to do any of these prescribed items or any of the general rules and conditions of a parole that are prescribed by the Missouri Department of Probation and Parole, then you can anticipate that I will terminate this parole and order you transported to the reception center of the Missouri Penitentiary in Jefferson City to serve twenty years, do you understand me?
On June 15, 1977, Romano was involved in a car accident that injured his acquaintance, Timothy Bradley. The sequence of events that followed that accident is somewhat bizarre at best. After the accident Romano was arrested and charged with the felony of leaving the scene of an accident pursuant to Mo.Rev.Stat. § 577.060. Later, the Boone County assistant prosecuting attorney *884 filed an information charging Romano with leaving the scene of the June 15 accident. The information was subsequently amended to charge Romano with the misdemeanor of careless and reckless driving. On July 18, 1977, Judge Whipple revoked Romano's probation after holding a hearing on that issue and imposed the original twenty year sentence for Romano's underlying drug conviction. Romano was ultimately found guilty of the misdemeanor of careless and reckless driving and was fined $100 plus court costs.
Romano was represented by two lawyers at the probation revocation hearing where many witnesses testified about the June 15, 1977 accident. Witness Gerald Saunders stated that he was in front of the Stein Club in Columbia, Missouri, at approximately 2:00 o'clock A.M. on the day of the accident when he saw a car fitting the description of Romano's automobile swerve into the parking lot of the club and strike Timothy Bradley. Saunders also testified that after the car stopped Jody Seificas and Terry DeHaven emerged from the car and then the automobile drove away. (Tr. at 72.) Saunders further stated that DeHaven later told him that Romano was the driver of the automobile. (Tr. at 77.)
Larry Wright, a police officer who investigated the June 15 accident, testified that he questioned Seificas about the incident and that she told him that Romano was the driver of the car. (Tr. at 87.) Furthermore, Ann Bradley, James F. Bradley, and Colleen Hilbert, the accident victim's mother, father, and sister respectively, all testified that while visiting Timothy Bradley in the hospital Romano came into the hospital room and stated in essence "Why did you jump in front of me" or "It's too bad you jumped in front of me." (Tr. at 102, 107, and 113 respectively.)
Jody Seificas was called to testify at the revocation hearing but continually refused to answer any questions on Fifth Amendment grounds. However, the following discussion took place between the state's attorney and Seificas.

Q. by Seitz: Mrs. Seificas, you previously testified and an officer testified to certain statements attributable to you. Now, I'm going to relate those to you. He's testified, you're under oath, that he talked with you the night of this accident and that you told him you were a passenger in the car. Do you admit or deny that?

A. by Seificas: I admit that. (Tr. at 116-17.)
The court did not hear Seificas' answer and directed the court reporter to reread the question. After the court reporter read the question, Seificas again refused to answer on Fifth Amendment grounds claiming that she did not understand the question when the state's attorney first posed it to her.
Judge Whipple then entered his findings of fact and concluded that Romano's probation should be revoked. Paragraph 8 of the findings reads: "The Court rules that witness Jody Seificas intelligently understood the questions and knowingly answered the questions and thereby waived the Fifth Amendment constitutional right against self-incrimination and her answer is considered as material in assisting the Court in determining that defendant (Romano) did in fact drive the automobile that struck Timothy Bradley." But, nowhere in the record before this Court, including the transcript of Romano's revocation hearing, is an indication that Judge Whipple considered what alternatives were available that might be more appropriate than sending Romano to jail for twenty years. The next part of this story is somewhat extraordinary.
Seeking postconviction relief, Romano filed a pro se motion in the Circuit Court of Laclede County, Missouri, pursuant to Mo.S. Ct.R. 27.26, challenging the probation revocation proceeding. Judge Whipple denied Romano's Rule 27.26 motion because Missouri case law holds that while Rule 27.26 has effectively displaced the state's habeas corpus petition in most cases, probation revocation is an exception to the general rule. Judge Whipple held that the proper remedy *885 lay in a habeas corpus petition. Romano then filed a petition for writ of habeas corpus challenging the probation revocation in the Cole County Circuit Court, the county of his incarceration. But, Cole County Circuit Judge James T. Riley denied Romano's petition. Judge Riley held that Romano had to file a Rule 27.26 motion in Laclede County where Romano was convicted.
Romano then returned to Laclede County and filed a motion for reconsideration and cited Judge Riley's opinion in support. Judge Whipple again denied Romano's motion and restated the same basis for his ruling as set forth in his original denial of Romano's Rule 27.26 motion filed earlier. Romano then appealed Judge Whipple's ruling in the Missouri Court of Appeals, Southern District, but the appeal was dismissed. Romano next filed a petition for writ of error coram nobis, challenging his reckless driving conviction. That writ was denied. Romano appealed the denial of the coram nobis writ to the Missouri Court of Appeals, Eastern District, but the Court of Appeals dismissed his cause for failure to prosecute.
Romano next filed a petition for writ of habeas corpus with the Honorable John F. Nangle in this district. Judge Nangle adopted the opinion of the Honorable William S. Bahn, United States Magistrate, that held that the federal court did not have jurisdiction to hear Romano's claim. Romano appealed Judge Nangle's decision to the United States Court of Appeals for the Eighth Circuit but the Eighth Circuit held that Romano had not fully exhausted his available state remedies. The Eighth Circuit noted that Romano could still obtain relief in the state court by filing a habeas corpus petition with the Missouri Supreme Court. In October, 1982, Romano filed a habeas writ with the Missouri Supreme Court challenging his probation revocation proceeding but the Missouri court denied Romano's petition without an opinion. Romano finally filed another petition for writ of habeas corpus on which the Court is ruling today.

II
The Court initially recognizes that whether to revoke a party's probation because that party violated a condition of his probation is left to the sound discretion of the sentencing judge. United States v. Rifen, 634 F.2d 1142, 1144 (8th Cir.1980); United States v. Alarik, 439 F.2d 1349, 1351 (8th Cir.1971). The sentencing judge need only satisfy himself that the party on probation "abused the opportunity granted him not to be incarcerated." Schneider v. Housewright, 668 F.2d 366 (8th Cir.1981). Moreover, the burden of proof involved in a probation revocation proceeding is not as great as that required to convict a person of a crime. United States v. Burkhalter, 588 F.2d 604 (8th Cir.1978). But, the sentencing judge has two considerations in ruling on a probation revocation, (1) whether the defendant has violated a condition of his probation, and (2) if there are any alternatives to incarceration. Gagnon v. Scarpelli, 411 U.S. 778, 784, 93 S.Ct. 1756, 1760-61, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). The decision of the sentencing judge to revoke probation cannot be merely a reflexive reaction to technical violations of conditions imposed, because the whole thrust of the probation-parole movement is to keep men in the community working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail. United States v. Burkhalter, at 606, citing Gagnon v. Scarpelli, 411 U.S. at 785, 93 S.Ct. at 1761.
The Court finds, based on the record before the bench and the evidence as stated above in this memorandum, that Judge Whipple did not abuse his discretion in finding that Romano was the driver of the automobile that caused the accident on June 15, 1977, and, thus, committed a crime and violated his probation. Furthermore, the Court finds that even if Judge Whipple improperly considered the testimony of Jody Seificas in reaching a decision to revoke *886 Romano's probation, such consideration was harmless error. Kartman v. Parratt, 535 F.2d 450, 454 (8th Cir.1976). In light of the remaining evidence that tended to implicate Romano as the driver of the automobile in the June 15 accident, Judge Whipple likely would have reached the same result even if he had excluded the answer of Seificas. The only error that this Court finds with the revocation hearing held by Judge Whipple is the lack of consideration of alternatives to incarceration. However, the Court finds that such lack of consideration is a fatal flaw that resulted in an abuse of discretion and, therefore, Judge Whipple's decision must be overturned. Abel v. Wyrick, 574 S.W.2d 411, 419 (Mo. 1978).
The Missouri Supreme Court in Abel v. Wyrick addressed this issue involving the due process requirements for a probation revocation hearing. In Abel, the judge that revoked the defendant's probation had failed to consider alternatives to incarceration before sending the defendant to jail. Similarly to the attitude displayed by the able Judge Whipple in this case, the judge in Abel stated "The only thing I'm interested in is what you have told me; you violated your probation." The judge continued by stating "There is no use wasting any more time, I'm going to revoke your probation." Although the Missouri high court recognized that in many cases no workable alternatives to incarceration may present themselves, as where a probationer previously convicted of burglary has again committed the same or a similar offense, it concluded that other alternatives were certainly worthy of consideration in that case. 574 S.W.2d at 419. The Missouri court concluded by stating,
It is clear that the judge did not consider alternatives to incarceration or the relative benefits of incarceration to petitioner and to society, as opposed to the benefits of some alternative treatment, but simply decided to incarcerate on the basis of the broken conditions of probation themselves. On these facts, this was an abuse of discretion.
As mentioned above, Judge Whipple indicated to Romano that once it was determined that he had violated a condition of his probation, he would terminate Romano's probation and send him to jail. The Court recognizes that such admonitions are commonly used by sentencing judges to inject fear of resulting consequences and discourage probation violations. But, when such statements are coupled with a record totally devoid of evidence showing that the judge considered alternatives to incarceration, there prevails a strong inference that the judge harbored a disposition to send Romano to jail for any probation violation, regardless of the nature of the violation and without regard to any other possible options. Here, Romano was convicted of a misdemeanor that resulted in the injury of Romano's personal friend. Certainly, since the underlying conviction was for a drug offense, alternatives to incarceration should have been considered, on the record, and if Judge Whipple decided still to send Romano to jail, he should have given the reasons why the alternatives were inappropriate. The Court does not attempt to exhaust the full range of alternatives that were available to Judge Whipple, but surely he could have considered public service work, mandatory driver's training classes, or even restitution to Timothy Bradley and his family as viable options. Then if Judge Whipple had still decided to send Romano to jail and stated his reasons for doing so, there would have been prima facie evidence of his deliberations. But under these circumstances the Court finds that Judge Whipple abused his discretion by sending Romano to jail without exploring other alternatives that would have better benefited Romano, the victim, and society, considering the offense for which Romano's probation was revoked and the nature of the conduct leading to revocation.
This Court knows all too well the pressures of time and the frustrations of a *887 beleaguered trial judge whose patience and understanding are taxed to the utmost in his everyday assignments. Small wonder, then, that the tolerance of the trial judge grows thin when an individual who has been once given a chance to escape imprisonment violates the terms of his probation immediately afterward. But it is really the trial judge who must gauge the measurements of the judicial system, and who must, therefore, resist the temptation to overkill.
Of necessity, the appellate courts deal with principles of law and broad verities of truth; they cannot easily evaluate personal distinctions. But the trial judge has a man of flesh and blood before him; he must weigh and measure the effect of judicial decisions, not only on the victim but on the defendant and the community. The scales must be graded in grams and not in tons.
Therefore, the learned trial judge must recollect the circumstances of the sentencing, the factors involved in the acts leading to revocation, and must consider the alternatives to an original prison sentence. While a busy trial judge is not expected to be encyclopedic in his enumeration of alternatives, it is hardly sufficient merely to recite a mechanical phrase that alternatives were considered. The better policy is for the trial judge to share his evaluation as to the inadequacy of alternatives so as to clearly and unequivocally show that he has actually given thought to other approaches besides the original sentence, especially when, as in this matter, the sentence was for a lengthy prison term, while the actions leading to the revocation could only have resulted in minor punishment had the defendant not been on probation.
This Court holds that in the absence of material testimony, agreement of counsel, or specific response to a plea from the defendant for alternatives to revocation and sentence, the trial court must express a rudimentary explanation for the rejection of alternatives. A record devoid of anything but a mere recital that alternatives had been considered and denied does not comport with justice. But here there is not even a naked assertion of the rejection of alternatives. This Court is not convinced that the harassed trial judge gave judicial thought to the alternatives to incarceration.
The Court's next step is to fashion a remedy for Romano. As stated earlier, Romano had served only about three months of his probationary period before Judge Whipple revoked his probation. Romano then served five and one-half years in the custody of the Missouri Department of Corrections at the Jefferson City penitentiary. The Court's finding today that Judge Whipple abused his discretion by revoking Romano's probation without considering alternatives to incarceration places Romano back in the position he would have been in had probation not been revoked  on probation. Since Romano spent over five years in jail the Court finds that the probationary period has now expired. Respondent argues that if the Court grants the habeas writ, the Court should place Romano back on probation and allow him to serve its duration, which is four years and nine months. Respondent maintains that conditions of probation are different from conditions of incarceration and therefore the Court should not allow time spent in the custody of the Missouri Department of Corrections to apply toward Romano's probationary period. The Court agrees that conditions of incarceration are different from conditions of probation. The rigors and stress associated with imprisonment are far greater than those of probation. The Court finds that Romano has now met the requirement of the law, and hereby orders that he be released from the custody of the Missouri Department of Probation and Parole.
Romano's petition for writ of habeas corpus is granted.

ORDER
In accordance with the memorandum filed this day and incorporated herein,
IT IS ORDERED that Nicholas James Romano's petition for writ of habeas corpus is GRANTED.