Nicholas James ROMANO, Appellee,

v.

Dr. Lee Roy BLACK and Dick D. Moore, Appellants.

Nicholas James ROMANO, Appellant,

v.

Dr. Lee Roy BLACK and Dick D. Moore, Appellees.

Nos. 83–2000, 83–2001.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1984.

Decided May 31; 1984.

Rehearing Denied June 28, 1984.

John Ashcroft, Atty. Gen., John C. Reed, Asst. Atty. Gen., for appellants.

Jordan B. Cherrick, St. Louis, Mo., for appellees.

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Appellants Dr. Lee Roy Black and Dick D. Moore of the Missouri Department of Probation and Parole appeal from the District Court's order granting Nicholas J. Romano's petition for a writ of habeas corpus. The District Court held that the sentencing judge denied Romano due process in failing to consider alternatives to incarceration before revoking Romano's probation. *Romano v. Black*, 567 F.Supp. 882 (E.D.Mo. 1983). We affirm the District Court's order. Romano cross-appeals, challenging the District Court's finding that one of the witnesses at the probation revocation hearing validly waived her privilege against self-incrimination. We need not discuss this contention, however, since our affirmance of the District Court's order grants· Romano all the relief he seeks.

## I. *Facts and Procedural History*

On December 10, 1974, Romano was arrested for transferring and selling marijuana. A two-count indictment charging him with transferring and selling marijuana was issued. On November 15, 1976, Romano pled guilty to both counts before the Honorable Dean Whipple, Circuit Judge of the Twenty-Sixth Judicial Circuit of Missouri, sitting in Laclede County. On April 13, 1977, Romano was given a suspended sentence of two concurrent twenty-year prison terms and was placed on probation for five years.

On June 15, 1977, Romano was involved in an automobile accident. He was arrested and charged with leaving the scene of an accident—a felony in the State of Missouri. At a probation revocation hearing held on July 18, 1977, Judge Whipple revoked Romano's probation and imposed the two concurrent twenty-year suspended sentences. Romano began serving those sentences immediately. The charge of leaving the scene of an accident was reduced later to careless and reckless driving, a misdemeanor, and Romano pled not guilty to that charge. On October 12, 1977, Romano was found guilty of careless and reckless driving and was fined one hundred dollars and assessed costs.

On March 28, 1980, Romano filed with Judge Whipple a pro se motion for post-conviction relief under Mo.R.Crim.P. 27.26 (Rule 27.26). In this motion Romano challenged the probation revocation proceeding. Judge Whipple denied this motion on July 11, 1980, holding that although a Rule 27.-26 motion is the proper avenue for post-conviction relief in Missouri, an exception to that rule is made when the challenged proceeding is one for probation revocation, in which case relief must be sought by way of a habeas corpus petition.

On the basis of Judge Whipple's ruling, Romano filed a petition for a writ of habeas corpus challenging his probation revocation. The petition was filed in the Circuit Court of Cole County, the county in which Romano was incarcerated. That court denied this petition and instructed Romano to file a Rule 27.26 motion in the county where he was convicted and sentenced. Acting on that instruction, Romano then petitioned the Laclede County Circuit Court for reconsideration of his motion for post-conviction relief. On August 27, 1980, Judge Whipple denied Romano any relief, restating the reasons given when he originally denied Romano's 27.26 motion. Romano then filed a notice of appeal with the Missouri Court of Appeals. The appeal was dismissed without opinion on February 3, 1981.

On April 14, 1980, Romano filed a petition for writ of error *coram nobis* challenging the constitutionality of his reckless driving conviction. The petition was denied, and Romano filed a notice of appeal with the Missouri Court of Appeals. This appeal was dismissed on November 18, 1980 for failure to prosecute.

On June 13, 1981, Romano filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 2254. In this petition he once again challenged the constitutionality of his reckless driving conviction. The petition was denied on October 2, 1981. The District Court reasoned that it was powerless to affect Romano's incarceration since his petition challenged only the constitutionality of his reckless driving conviction and not the constitutionality of his probation revocation proceeding. A subsequent appeal by Romano to this Court was dismissed without prejudice because Romano had failed to exhaust state remedies. *Romano v. Wyrick,* 681 F.2d 555, 556–57 (8th Cir.1982). On October 4, 1982, Romano filed a petition for a writ of habeas corpus with the Missouri Supreme Court challenging his probation revocation proceeding. The petition was denied without opinion on October 18, 1982.

Having exhausted his state remedies, on November 4, 1982 Romano again filed a petition for a writ of habeas corpus with the District Court under 28 U.S.C. § 2254, this time challenging the probation revocation proceeding. While the petition was pending, Romano was released on parole on December 17, 1982. The District Court granted Romano a writ of habeas corpus on June 20, 1983, and ordered him released unconditionally from the custody of the Missouri Department of Probation and Parole. 567 F.Supp. at 887. The present appeals are from the judgment of the District Court.

## II. *Discussion*

### A. `Adequacy of the Probation Revocation Hearing`

The District Court held that Romano was denied due process when, during the probation revocation hearing, Judge Whipple failed to consider alternatives to imposition of the prison terms to which he previously had sentenced Romano. We affirm.

■ The revocation of probation for violation of a condition of probation is within the discretion of the sentencing judge. *United States v. Rifen,* 634 F.2d 1142, 1144 (8th Cir.1980). If the sentencing judge determines that the probationer has "abused the opportunity granted him not to be incarcerated," the judge may revoke the probation. *Schneider v. Housewright,* 668 F.2d 366, 368 (8th Cir.1981) (quoting *United States v. Nagelberg,* 413 F.2d 708, 709 (2d Cir.1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970)). In making this determination the government must present enough evidence " 'to satisfy the [sentencing] judge that the conduct of the probationer has not met the conditions of the probation' " *United States v. Strada,* 503 F.2d 1081, 1085 (8th Cir.1974) (quoting *United States v. Garza,* 484 F.2d 88, 89 (5th Cir.1973)); *Ewing v. Wyrick,* 535 S.W.2d 442, 444 (Mo.1976). This is a far less stringent test than the reasonable doubt standard used in criminal trials.

■ In the instant case, it has been established by sufficient evidence that Romano violated the terms and conditions of his probation. The sentencing judge's analysis, however, should not end with the mere finding of a probation violation. The Supreme Court requires that a sentencing judge state the reasons for revoking probation in order to satisfy the due process requirements of the Fifth and Fourteenth Amendments. *Gagnon v. Scarpelli,* 411 U.S. 778, 784, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973) (citing *Morrissey v. Brewer,* 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972)). The revocation decision must include both a finding that the probationer violated a condition of his parole and that the probationer should be committed to prison. The Court considered such an analysis vital to preserving the function of the probation and parole systems. As the Court noted:

Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.

*Id.* 411 U.S. at 785, 93 S.Ct. at 1761. *Gagnon* and *Morrissey* thus establish that "informed use of discretion" in a revocation proceeding must include consideration of alternatives to incarceration.[1]

An example of the efforts of state courts to implement the *Gagnon* and *Morrissey* standards may be found in *Abel v. Wyrick*, 574 S.W.2d 411 (Mo.1978). At the probation revocation hearing in *Abel* the probationer admitted that he had violated his probation. The sentencing judge did not allow him to explain the reasons for his violation, and stated: " 'The only thing I'm interested in is what you have told me; you violated your probation. There's no use wasting any more time, I'm going to revoke your probation. What they do with you up at the institution, I don't know. But a rule is a rule.' " *Id.* at 419. In holding that the sentencing judge failed to consider alternatives to incarceration, as required by *Gagnon* and *Morrissey*, the court stated: "Of course, the judge, in his discretion, may have concluded, after weighing the alternatives, that none would be appropriate and that incarceration was the only realistic alternative. But at least more than a cursory consideration of alternatives is required." *Id.*

Appellants Black and Moore note correctly that the sentencing judge in the present case made no statements as blatant as

those made by the sentencing judge in *Abel*. We believe, however, that the *Abel* court did not intend any rigid formula for determining what constitutes adequate consideration of alternatives to incarceration, but instead anticipated case-by-case analyses. Similarly, we must consider carefully the record here in order to determine if it shows compliance with the Constitutional standards established by *Gagnon* and *Morrissey*.

■ Our analysis of Judge Whipple's treatment of Romano, first at the sentencing hearing and later at the probation revocation hearing, leads us to conclude that Judge Whipple failed to consider any sanction other than incarceration for the probation violation committed by Romano. At the sentencing hearing Judge Whipple made the following statements to Romano in pronouncing sentence:

> [I]t is my intentions [sic] to assess punishment against you of 20 years in the penitentiary and place you on parole [sic] for a period of five years and probably extend that for another five years for a total of ten years on probation with very strict rules. And a violation of any one of those rules will cause that parole [sic] to be revoked and you sent to the penitentiary....
>
> [Following enumeration of the special conditions of Romano's probation] Now, Mr. Romano, if I get any report back that you have refused any of these items I will consider it a violation of this parole [sic].... At that time, I will issue a warrant for your arrest and order you held without bond until we can have a parole [sic] revocation hearing and if at that hearing it is proven that you did refuse to do any of these prescribed

---

1. The following requirements for a parole revocation hearing were established in *Morrissey:* (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
*Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604. *Gagnon* applied these requirements to probation revocation hearings. *Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1759.

items or any of the general rules and conditions of a parole [sic] that are prescribed by Missouri Department of Probation and Parole, then you can anticipate that I will terminate this parole [sic] and order you transported to the reception center of the Missouri Penitentiary in Jefferson City to serve 20 years, do you understand me?

Trial Transcript at 46, 49–50. These statements alone give some indication that the sentencing judge was convinced from the start of the process that Romano was a high-risk candidate for probation.

Romano's marijuana conviction was his first felony offense. His only prior conviction came in 1967 for misdemeanor possession of an unspecified controlled substance, for which he was fined $50. During the 28 months between his arrest and sentencing in the present case his only violation was one traffic ticket for running a stop sign.

Although the pre-sentence investigation report noted that Romano had problems in dealing with authority figures, it also noted that his employers rated his work and work habits as good. One of these employers, Mike Atkinson, the owner of the Stein Club bar, testified on Romano's behalf at the sentencing hearing.

The pre-sentence investigation recommended concurrent five-year sentences on each count. The prosecutor asked for concurrent ten-year sentences on each count. Instead, Judge Whipple gave Romano probation and concurrent twenty-year suspended sentences on each count. Twenty years is the maximum sentence provided by Missouri law for this first offense.

The conclusory way in which the sentencing judge announced his decision to revoke Romano's probation provides evidence of his failure to consider alternatives to incarceration. Although significant evidence mitigating the seriousness of Romano's probation violation was presented at the hearing, the sentencing judge's decision does not even acknowledge that evidence. The incident later determined to be a probation violation occurred outside of the Stein Club, Romano's former place of employ-ment. Romano's car struck Timothy Bradley, a pedestrian with whom Romano was acquainted. Immediately after the incident, Romano stopped the car, let out two passengers, and drove away. The two passengers attended to Bradley. Ten hours after the accident, Romano visited Bradley in his hospital room to check on his condition. While it is true that Romano did not immediately report the accident and that he did leave the scene, given his other post-accident behavior it hardly can be said that he sought to escape responsibility for his actions. The facts do not compel a conclusion that Romano's effort at rehabilitation had failed or that he represented a danger either to himself or to society. A sentencing judge might reasonably have concluded that continued probation, perhaps with additional conditions, was the proper alternative. The point, however, is not that Judge Whipple imposed incarceration, but that he did so without giving any indication that he considered any of the possible alternatives.

> The District Court concluded as follows: Judge Whipple indicated to Romano that once it was determined he had violated a condition of his probation, he would terminate Romano's probation and send him to jail. The Court recognizes that such admonitions are commonly used by sentencing judges to inject fear of resulting consequences and discourage probation violations. But, when such statements are coupled with a record totally devoid of evidence showing that the judge considered alternatives to incarceration, there prevails a strong inference that the judge harbored a disposition to send Romano to jail for any probation violation, regardless of the nature of the violation and without regard to any other possible options.

567 F.Supp. at 886. The District Court's analysis is consistent with the Missouri Supreme Court's decision in *Abel, supra,* and also is in keeping with the teaching of *Gagnon* and *Morrissey* that once an individual has been given the opportunity to prove himself through probation or parole, due process protects the liberty interest

inherent in that opportunity to the extent that it may not be ended without careful consideration of options other than active prison time.

**B.** *The Remedy Granted by the District Court*

The District Court noted that Romano's initial probation term was for five years. He had served only three months of that probationary period at the time his probation was terminated. After serving five and one half years in prison, Romano was released on parole. Appellants Black and Moore argue that, since the conditions of probation are significantly different from the conditions of incarceration, Romano should be returned to his status as a probationer.

■ The position advanced by appellants Black and Moore if adopted would result in the imposition of a cumulative penalty upon Romano requiring him to serve out the remainder of a five-year probation term, with the possibility of imposition of a further active prison term for a violation, all in addition to the five-and-one-half years he has served in the Missouri State Penitentiary plus one-and-one-half years of conditional freedom while on parole. The District Court, in the sound exercise of its discretion, did not choose to blind itself to the time Romano had served in the custody of the State of Missouri. The District Court noted:

> The Court agrees that conditions of incarceration are different from conditions of probation. The rigors and stress associated with imprisonment are far greater than those of probation. The Court finds that Romano has now met the requirement of the law, and hereby orders that he be released from the custody of the Missouri Department of Probation and Parole.

567 F.Supp. at 887. We hold that the District Court did not abuse its discretion in granting this remedy. *See Iasigi v. Van de Carr,* 166 U.S. 391, 17 S.Ct. 595, 41 L.Ed. 1045 (1897).

The order of the District Court is affirmed.