**Ex parte Edith SCHMEETS, Petitioner,**

v.

**William TURNER,
Superintendent, Respondent.**

No. WD37471.

Missouri Court of Appeals,
Western District.

Jan. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

Application to Transfer Denied
April 15, 1986.

---

3. *See* sections 217.450 through 217.520, RSMo Supp.1984. Section 217.490 sets forth an Agreement on Detainers.

Larry Maples, Asst. Public Defender, Joplin, for petitioner.

William L. Webster, Atty. Gen., Jefferson City, Rosalynn Van Heest, Asst. Atty. Gen., for respondent.

Before CLARK, C.J., BERREY, J., Presiding, and DIXON, J.

## ORIGINAL PROCEEDINGS IN HABEAS CORPUS

DIXON, Judge.

This is a habeas corpus proceeding to review revocation of probation. The sole issue is whether there was sufficient evidence to support the trial court's order. On July 26, 1982, petitioner pleaded guilty to the charge of passing a no-account check. The trial court suspended imposition of sentence and placed petitioner on probation for a period of three (3) years. A condition of petitioner's probation was that "[d]efendant shall make restitution on all outstanding checks which she has written at a rate sufficient to pay all checks during her probation but not less than $100.00 per month."

On May 30, 1985, a violation report was filed, asserting Schmeets had violated condition number nine of her probation by failing to make restitution. A hearing was held July 8, 1985. Plaintiff had paid $854.81 out of the $5,008.43 restitution required.

According to petitioner's probation and parole officer, Linda Campbell, petitioner's primary income was social security in the amount of $200 a month, and petitioner also occasionally worked on telephone solicitations. Ms. Campbell had directed petitioner to participate in vocational rehabilitation to improve her earning ability, and petitioner had seen Don Martin, an official at vocational rehabilitation on at least one occasion, but any recommendations were not followed through.

According to Ms. Campbell, petitioner has two children, one who lived with her through most of the probation period and one who lived with her periodically. Most of the time petitioner had to walk to get to her job due to unavailability of other types of transportation. It was Ms. Campbell's feeling, however, that the lack of transportation did not hinder petitioner in finding a job.

Ms. Campbell stated she felt that at times petitioner made good-faith efforts to pay her restitution, but that at other times, she did not. Ms. Campbell testified that she believed petitioner could have paid more on her restitution: "[S]he has probably come very close to paying as much as she could but not as much, I don't believe." Furthermore, it was Ms. Campbell's belief that petitioner could "definitely" have had more income if she had tried. Petitioner could have followed through with vocational rehabilitation, found other types of employment, and been more selective about her employers (she was not always paid by them).

Ms. Campbell was aware of one hospitalization of petitioner that occurred early in her probation. Ms. Campbell felt that an

extension of probation would not result in payment of restitution beyond that already paid by the petitioner. Based on these opinions, it was Ms. Campbell's recommendation that petitioner's probation be revoked and that petitioner be incarcerated.

Brad Cameron, a psychiatric social worker, had consulted with petitioner in crisis times, including times of financial problems. During these times petitioner had demonstrated concern about supporting her son, supplying her basic needs of life, and paying restitution. Cameron testified that petitioner had made efforts to pay restitution, but that she needed a more structured job and would have no difficulty with heavy lifting or labor-type work.

Petitioner testified that in 1982, she moved to Springfield and stayed with her ex-husband for awhile. She became ill before she was able to go to work, developed pneumonia, and suffered complications from a medical test. She began to suffer from a diseased nerve in her spine which caused pain in her leg and back. She was able to get by with state aid and earnings from part time work, and she and her son were able to move to an apartment. In January, 1983, she began to work for someone who did not pay her, and as a result, she was evicted from her apartment for nonpayment of rent. She went to the employment office, and sometimes she did get jobs there, but sometimes her employers did not pay her. Petitioner also testified that she had contacted Don Martin of Vocational Rehabilitation more than one time. Martin told her that as long as she was working, just to keep working and not to bother with vocational rehabilitation. Petitioner stated that she was unable to lift heavy loads or stand on her feet a great deal, and that recently she had been hospitalized for bleeding through her colon, although that had not kept her from working.

Art Jones, Executive Director of Soul's Harbor, a charitable assistance group, had occasion to help petitioner with her rent, give her groceries, and provide a truck to put some things in storage for her. It was Jones's opinion that petitioner was making an effort to help herself.

At petitioner's request, the court took the matter of petitioner's probation under advisement, and the matter went to hearing again on August 12, 1985. Petitioner testified that between the time of the two hearings, she had been hospitalized due to bleeding, had had a CAT-scan, and been given therapy for her back. She was diagnosed as having a lower lumbar spine condition which might require fusion, and was instructed not to work for five or six weeks. Petitioner testified that she has had severe back pain since prior to 1982 and also suffers from swelling in her legs. Consequently, she is unable to lift loads or stand on her feet for long periods. She also suffered from cellulitis and phlebitis. Petitioner experienced numbness in her hands during the probationary period, and she believes this affected her ability to work. Petitioner denied that she received social security, but stated that she had received aid to dependent children until April of 1985.

Based on all the testimony, the trial court ruled that petitioner had violated her probation by failing to make a good-faith effort to make restitution and ordered that probation be revoked and that petitioner be sentenced to two years in the Missouri Department of Corrections.

The sole issue presented by the petitioner in her brief relates to the sufficiency of the evidence. Petitioner asserts that there was neither evidence nor corresponding findings that petitioner was responsible for her failure to make restitution, and no evidence or findings that alternatives to incarceration were inadequate.

Petitioner cites *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) as sole authority for the point. *Bearden* is cited for the proposition that due process requires that there be evidence and findings that the failure to pay restitution is the fault of the probationer and also that an alternative punishment is inadequate before probation or parole may be revoked. There is no doubt that *Bearden*

so holds. A short passage from the opinion demonstrates that that holding is central to the decision.

The question presented here is whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate.

*Bearden*, 461 U.S. at 665, 103 S.Ct. at 2069.

The Supreme Court ruled that a bifurcated finding of both lack of fault and unavailable alternative punishment is constitutionally required for parole revocation.

If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. See ALI, Model Penal Code § 302.2(1) (Proposed Official Draft 1962). Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, ... it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a "substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate." *Gagnon v. Scarpelli, supra,* 411 U.S. [778] at 790, 93 S.Ct. [1756] at 1764 [36 L.Ed.2d 656 (1973)].

*Bearden*, 461 U.S. at 668–69, 103 S.Ct. at 2070–71. The Supreme Court in *Bearden* reversed and remanded the case for further proceedings in the trial court.

The state argues in the present case that the standard of review is determined by *State v. Wilhite*, 492 S.W.2d 397 (Mo.App.1973), and claims the following excerpt from *Wilhite* is controlling:

The degree of proof necesary [sic] for parole or probation revocation is less than that required to sustain a criminal conviction. The hearing judge need only be reasonably satisfied that the terms of the parole have been violated, and *the sole question on review is whether he abused his discretion in entering the order of revocation.*

*Id.* at 399 (Emphasis added). The state argues that the emphasized language is the standard of review. *Wilhite* relied upon and cited *State ex rel. Douglas v. Buder*, 485 S.W.2d 609 (Mo. banc 1972), *rev'd*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973). The statement in *State ex rel. Douglas v. Buder*, that probation revocation was not reviewable, was overruled in *Douglas v. Buder*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973). The standard of *Wilhite* referring to discretion in the trial court has no application in the light of *Bearden*. "[J]udicial discretion is the option the trial judge has in doing or not doing a thing which cannot be demanded by a litigant as an absolute right." *Anderson v. Robertson*, 402 S.W.2d 589, 592 (Mo. App.1966). A due process right to presentation of evidence and findings derived from such evidence is incompatible with notions of judicial discretion. It may be that probation revocation has an implication of discretion, in the sense that even though the evidence may support such action, the court is not required to revoke. The existence of that limited discretion does not establish the scope of review. *Bearden* requires evidence and findings as a matter of due process and, absent such evidence and findings, parole may not be revoked. Such evidence and findings are reviewable like any other findings of fact and conclusions of law. *Bearden* does not discuss the burden of proof and assumes the burden rests upon the state as to both issues.

*Bearden* does not address the quantum of proof issue and there seems to be no constitutional impediment to the Missouri articulation of the standard which requires that the hearing judge be "reasonably satisfied." *Sincup v. Blackwell,* 608 S.W.2d 389, 391 (Mo. banc 1980).

The record demonstrates unequivocally the probation violation of failing to make restitution. The entire dispute in the case centers upon the question of the ability of the petitioner to make restitution. The court had before it evidence from which the court could and did find that the petitioner's failure to make restitution was not due to an inability of petitioner to do so. Put another way the evidence showed petitioner could have had more employment and made greater restitution. It follows from this that the court complied with the *Bearden* standard as to the *reason* for the violation. As to the alternatives to imprisonment, there was evidence petitioner would not make more restitution if an additional period of parole was granted. No other alternative was suggested, nor was there any evidence of other available alternatives. The court specifically found that the interests of justice would be served by revocation which indicates the court weighed the competing interests. A probationer's failure to make reasonable efforts to pay restitution may indicate that imprisonment may now be required to satisfy the State's interests. *Bearden,* 461 U.S. at 670, 103 S.Ct. at 2071. There is no basis to afford the petitioner relief and she is remanded to the custody of the respondent.

All concur.