Debra Mae JACKSON, Petitioner,

v.

Mickey GILL, Respondent.

No. 88–0776–CV–W–6–P–JWO.

United States District Court, W.D. Missouri, W.D.

April 10, 1989.

---

Debra Mae Jackson, St. Joseph, Mo., pro se.

Hershel D. Shepherd, Asst. Pros. Atty., St. Joseph, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

JOHN W. OLIVER, Senior District Judge.

### I

The supplemental response filed by the respondent pursuant to the orders entered February 6, 1989 attached a copy of the transcript of the May 31, 1988 hearing at which petitioner's State court petition for habeas corpus was denied. A substantial number of additional exhibits that reflected additional portions of the State court record were also attached to respondent's supplemental response.

Analysis of all the exhibits now before the Court establishes that the determination of the State trial court that petitioner's probation was properly revoked may not properly be presumed to be correct pursuant to 28 U.S.C. § 2254(d). For reasons that will be stated in detail, an order will be entered granting the pending petition for habeas corpus.

### II

We noted at the outset of our February 6, 1989 memorandum opinion, 704 F.Supp. 969, that this case "presents substantial questions as to whether petitioner's probation was revoked in accordance with the federal constitutional standards articulated in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)." Opinion at 1. We also stated in footnote 1 of that opinion that "[p]etitioner also cited and relied on *Abel v. Wyrick*, 574 S.W.2d 411 (Mo. banc 1978), which accurately articulated and properly applied the federal constitutional standards mandated in *Gagnon* and *Morrissey*." *Id.*

Fairness to the State trial habeas corpus court requires that it be stated that petitioner's counsel did not cite those leading Supreme Court of the United States cases in the petition for State habeas corpus filed in the trial court; those cases were not cited until successive petitions were later filed in the Missouri Court of Appeals and in the Supreme Court of Missouri. *See* Resp's Exh. F.[1]

The transcript of the trial court habeas corpus hearing also shows that for reasons which were neither stated nor are apparent, the hearing was devoted in large part to an inquiry of how many days the petitioner had spent in custody from the time she was first arrested until she was placed on probation.[2] The introduction of a copy

1. Both the Missouri appellate courts summarily denied the petitions for State habeas corpus relief without holding any evidentiary hearing, without making any findings of fact, and without stating any conclusions of law.

2. The three employees of the sheriff's office called as witnesses by petitioner's counsel established that the records kept by the Buchanan jail were exceedingly difficult to read and to understand. Respondent's Exhibit T attached to the supplemental response contained the factual data for what it may have been worth. Those records showed that Jackson was committed to jail on December 10, 1980. *Id.* at 77. On De-

cember 16, 1980 the public defender filed a motion for a mental examination. *Id.* at 96. On December 17, 1980 an order was entered granting that motion "pursuant to Chapter 552 and upon the Court's own information and belief that defendant has attempted suicide while incarcerated in the above captioned case, and that defendant has a prior history of mental problems and commitment in connection therewith." *Id.* at 92. Jackson was committed to the St. Joseph State Hospital in order that her competency to stand trial could be determined and whether she could be said to be criminally responsible at the time of the alleged offense. *Id.* at 93. Exhibit T also establishes that Jackson

of the divorce decree entered in the District Court of Shawnee County, Kansas (Resp's Exh. S), under which petitioner's former husband was ordered to pay to the Circuit Court of Buchanan County, Missouri the sum of $994.64 toward the restitution ordered in petitioner's case was also a meaningless gesture. For the record shows that although the petitioner called that order to the trial court's attention in a letter dated April 30, 1983 (*see* Resp's Exh. T at 24–29), the divorce decree containing that order was not adduced in evidence during the August 30, 1985 probation revocation proceeding.[3] In addition, the record does not show that the State has ever attempted to have petitioner's former husband comply with the order that he pay $994.64 in restitution as ordered by the District Court of Shawnee County, Kansas. Had petitioner's husband been required to do so, the State would have received restitution in an amount more than the total amount of all the checks that petitioner was charged with forgery. That fact and the other circumstances related in petitioner's five-page April 30, 1983 letter were not adduced in evidence at petitioner's revocation proceeding.

The order of the State habeas corpus court denying petitioner's State petition for habeas corpus shows on its face that relief was denied solely on the basis of the August 30, 1985 revocation proceeding. In the next part of this memorandum opinion we discuss the federal standard under which the constitutional validity of petitioner's probation revocation must be determined.

## III

### A.

Both the Missouri legislature and the decisions of the Supreme Court of Missouri recognize that probation revocation proceedings must comply with the federal constitutional standards articulated in *Morrissey* and *Gagnon*. V.A.M.S. § 559.036, enacted in 1977 repealed former V.A.M.S. § 549.101, and subsections 4 to 8 were added in the new statute in order to provide procedures that would afford a defendant in a probation revocation proceeding the minimum requirements of due process mandated by those two cases. The Committee Comment to § 559.036 stated that:

> Subsections 4 to 8 on revocation procedures were added to guarantee that the probationer's federal due process rights are observed. Under the federal due process guidelines in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972), a parole revocation case made applicable to probation revocation proceedings in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), it is clear that both a preliminary hearing and a revocation hearing are part of the process that would be due in a probation revocation case.

The Supreme Court of Missouri's landmark decision in *Abel v. Wyrick*, 574 S.W. 2d 411 (Mo. Banc 1978) was decided after *Morrissey* and *Gagnon* had been decided and appropriately held that "the minimum requirements of due process, as set out in *Gagnon* and *Morrissey* ... apply to probation revocation in Missouri."[4] *Id.* at 417.

---

spent most of the time before her plea of guilty in the State Hospital. *Id.* at 80, 83, and 70.

**3.** Petitioner's April 30, 1983 letter was written in response to an earlier April 27, 1983 motion to revoke probation (Resp's Exh. T at 30) which was not granted. Petitioner's letter advised the trial court that when she "was in the process of getting a divorce my ex-husband admitted that he was responsible for the checks—he forced me with threats to not only myself but to the children and resorted to beatings that drove me more than once to ask for police help or hospitalization.... Anyway one of the conditions [of the divorce decree] or whatever the legal term would be was that my ex-husband would pay

$1,000 of the checks.... [I]n December I received a letter from him stating he had paid the $1,000.00 in full ... in all honesty I really thought my ex-husband had paid the $1,000 so I just took it for granted that there was almost $1,200 paid." *Id.* at 26–28. Petitioner's former husband, of course, never complied with the order contained in the divorce decree.

**4.** *Abel* quoted the following minimum requirements of due process as set forth in those cases: " '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence;

The Supreme Court of Missouri granted its writ of habeas corpus in *Abel* on the ground that "petitioner was unconstitutionally deprived of notice of the nature of the charges against him and of the evidence to be presented against him, . . . ." *Id.* at 419. *Abel* properly emphasized the constitutional importance of the notice that must be given the defendant by holding that "[w]ithout notice, both of the nature of the charges and of the evidence to be presented against him, petitioner could not effectively prepare an explanation of the reasons for his actions and of any extenuating circumstances." *Id.* at 417. That court made clear the "burden is . . . on the state to show that the defects in notice and hearing were harmless, not on the petitioner to show that they were not." *Id.* at 418.

The State habeas corpus court in this case purported to rely on *Sincup v. Blackwell*, 608 S.W.2d 389 (Mo.1980), to justify the undisputed failure of the revocation court to prepare and file a written statement of the evidence relied on and the reasons for its revocation of probation as required by paragraph (f) of the federal standard quoted by the *Abel* court. *Sincup* cannot be read to justify such an omission.

The defendant in that case attacked the sufficiency of the evidence the trial court relied upon to revoke probation. The testimony of the numerous witnesses who testified at the revocation hearing was discussed by the Missouri Court of Appeals to support that Court's conclusion that the record "discloses a sufficient evidentiary basis for the hearing judge's determination that an infraction occurred." [5]  608 S.W.3d at 393.

The State habeas corpus court in this case also purported to rely on *Schmeets v. Turner*, 706 S.W.2d 504 (Mo.App.1986), to support its denial of postconviction relief. The factual and procedural circumstances presented in *Schmeets* are also clearly distinguishable. The defendant in *Schmeets* was placed on probation on condition that she "shall make restitution on all outstanding checks which she has written at a rate sufficient to pay all checks during her probation but not less than $100.00 per month." *Id.* at 505.

Unlike the factual circumstances of this case, the revocation court involved in *Schmeets* conducted an evidentiary hearing at which it received a probation officer's violation report and the testimony and recommendations of the defendant's probation officer, the testimony of the psychiatric social worker who had worked with the defendant during probation, the petitioner's testimony, and the testimony of the Executive Director of a charitable assistance group that had occasion to help the defendant in the past.[6]

The *Schmeets* court noted that the defendant cited and relied on *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) "for the proposition that due process requires that there be evidence and findings that the failure to pay restitution is the fault of the probationer and also that an alternative punishment is inadequate before probation or parole may be revoked." *Id.* at 506. It was properly concluded that there "is no doubt that *Bearden* so holds." *Id.* at 506–07.

---

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. at 2604. *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762." 574 S.W.2d at 417.

5. Unlike the record in this case, the *Sincup* court was able to conclude that the "record of

this probation revocation proceeding reveals adherence to the mandates of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and accordance with the required aspects of due process." *Id.*

6. A second evidentiary hearing was conducted in *Schmeets* at which defendant testified on her own behalf. The trial court's revocation was thus based on all the testimony adduced at those two hearings.

After quoting extensively from *Bearden,* the *Schmeets* court properly concluded that *"Bearden* requires evidence and findings as a matter of due process and, absent such evidence and findings, parole may not be revoked." *Id.* at 507.[7]

The record before this Court is an entirely different sort of record than the record considered by the Missouri Court of Appeals in *Schmeets.* Application of the federal standard properly articulated in *Schmeets* to the facts of this case requires that this Court grant habeas corpus relief.

### B.

Respondent's supplemental response also argues that *Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), somehow qualified the minimum requirements of the due process standard articulated in *Morrissey, Gagnon,* and *Bearden.* We disagree for the reason that *Romano* merely applied the standard stated in those earlier cases to the particular factual circumstances presented in that case.[8]

*Romano* summarized the due process requirements adopted in *Gagnon* that are directly applicable to this case by stating that "the final revocation of probation must be preceded by a hearing" and that the "probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Id.* 471 U.S. at 611–12, 105 S.Ct. at 2257–58.

The narrow question presented in *Romano* was whether, in addition to the due process requirements mandated by *Morrissey* and *Gagnon,* a defendant was "also entitled to an explicit statement by the factfinder explaining why alternatives to incarceration were not selected." *Id.* at 613, 105 S.Ct. at 2258. The Court concluded that such an additional requirement, although desirable, was not constitutionally required in light of the written statement already required of the revocation court by those earlier cases.[9]

It is important to note, as shown by the preceding footnote, that *Romano* cited *Douglas v. Buder,* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973), with approval. In *Douglas* a Missouri trial court revoked probation on the ground that the defendant violated a condition of probation that required that "all *arrests* for any reason must be reported without delay to [petitioner's] probation and parole officer." (Emphasis added). *Id.* at 430, 93 S.Ct. at 2199. The defendant promptly reported that he had been issued a *traffic citation* in Arkansas after he had been involved in a highway accident in Arkansas. There was no evidence, however, that he had been *arrested.*

The Supreme Court of the United States reversed the Supreme Court of Missouri's

---

7. The petition for habeas corpus was denied in *Schmeets* for the reason that under the factual circumstances of that case: "The court had before it evidence from which the court could and did find that the petitioner's failure to make restitution was not due to an inability of petitioner to do so. Put another way the evidence showed petitioner could have had more employment and made greater restitution. It follows from this that the court complied with the *Bearden* standard as to the *reason* for the violation." (The court's emphasis). *Id.* at 508.

8. *Romano* expressly concluded that *"Morrissey* and *Gagnon* outline the minimum procedural safeguards required by due process" and added that *"Bearden v. Georgia* recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution." *Id.* at 611, 105 S.Ct. at 2257.

9. *Romano* concluded in that regard that: "The procedures already afforded by *Gagnon* and *Morrissey* protect the defendant against revocation of probation in a constitutionally unfair manner.... The written statement required by *Gagnon* and *Morrissey* helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence. Cf. *Douglas v. Buder,* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973) *(per curiam )* (revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated)." *Id.* at 613–14, 105 S.Ct. at 2258–59.

decision that held that probation had properly been revoked. The Court held:

> The record before us discloses absolutely no evidence that petitioner was subjected to an "actual restraint" or taken into "custody" at the scene of the accident or elsewhere. Consequently, we conclude that the finding that petitioner had violated the conditions of his probation by failing to report "all arrests ... without delay" was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment.

*Id.* at 432, 93 S.Ct. at 2200.

It is also important to note *Romano's* reference to Missouri law and its citation with approval of *Moore v. Stamps,* 507 S.W.2d 939 (Mo.App.1974) (en banc). *Moore v. Stamps* granted habeas corpus because there was nothing in the record to show that the defendant had "received a written notice of the probation violations alleged" and because "there was no written statement by the trial court as to the evidence relied upon or the reasons for revoking petitioner's probation" as required by *Morrissey* and *Gagnon.* 507 S.W.2d at 951.

In the next part of this memorandum opinion we will determine whether the record shows that the petitioner was afforded the process to which she was entitled under the applicable federal standard.

## IV

### A.

The supplemental response filed pursuant to our February 6, 1989 order contended that the "evidence available to the Court when it ordered petitioner's probation revoked is shown in Exhibit T, legal file in case number CR680–258–FX." Supp. Response (Doc. 13) at 3. Exhibit T consists of 103 pages of various documents that related in some way to the prosecution of the petitioner.

Respondent's contention is untenable. For the record shows that none of the documents in Exhibit T were adduced in evidence during the August 30, 1985 proceeding at which petitioner's probation was revoked. Nor was any reference made to any of those documents at that proceeding.

Various of the documents in that file do establish that the petitioner was charged, first by an amended felony complaint (*id.* at 84–89) and later by a felony information (*id.* at 71–76) with three counts of forgery: Count I with forgery of a $454.62 check; in Count II with forgery of a $477.96 check; and in Count III with forgery of a $34.37 check.

Petitioner entered a plea of guilty to Count I involving a $454.62 check on June 1, 1981. *Id.* at 46–55. Sentence was imposed on September 4, 1981. *See* Resp's Exh. U. Petitioner was placed on probation for four years. At the suggestion of the prosecuting attorney, restitution was ordered in the amount of $3,935.23. *Id.* at 4.[10]

The last paragraph of the September 4, 1981 judgment and sentence provided that "the defendant is now placed on probation for a term of four (4) years under supervision of the Missouri State Board of Probation and Parole, on the condition of her lawful behavior; that she make restitution in the amount of $3,935.23 through the Office of the Prosecuting Attorney; that she have no checking accounts; that she pay the costs of this action; and further subject to the general conditions of the probation and parole laws of the State of Missouri." Resp's Exh. T at 36.

The record in this case clearly indicates that the petitioner was never "under the supervision of the Missouri State Board of Probation and Parole," as the September 4, 1981 judgment and sentence provided. Although there is nothing in the record to show, it is reasonably apparent that peti-

---

**10.** The trial court advised the petitioner at the close of the sentencing proceeding as follows:

THE COURT: You are to also to pay court costs. You will be under supervision of the State Board of Probation and Parole.

I'll tell you right now I won't fool around very long about revoking your probation. You're out of the check business.

That will be the order.

Resp's Exh. U at 5.

tioner was under the supervision of some unidentified Kansas probation officer, perhaps under the provisions of the Interstate compact for supervision of parolees and probationers, V.A.M.S. § 217.810 (Supp.) and K.S.A. 22–4101, *et seq.* Regardless, the record does not contain any report from any probation officer in regard to the petitioner's performance on probation.

### B.

Respondent contends in the supplemental response that petitioner "appeared three times, and three hearings were held on three separate motions to revoke probation for failure to pay restitution. These hearings, as shown by Exhibit T, were on May 18, 1983, January 30, 1985 and August 30, 1985." Supp. Response (Doc. 13) at 3. Respondent further contends that at "the hearing on May 18, 1983 the Court modified its order of probation by requiring petitioner to pay 20% of all future earnings towards restitution, then to court costs." *Id.*

What may have happened at the "hearings" that may have been conducted on May 18, 1983 and January 30, 1985 cannot be discussed. For respondent concedes that no transcript of those revocation proceedings have even been prepared and therefore are not before this Court.

The supplemental response contends that the trial court modified its September 4, 1981 order of probation on May 18, 1983 to require "the petitioner to pay 20% of all future earnings towards restitution, then to court costs." Although no order of modification is contained in the voluminous legal file,[11] the parties have proceeded on the assumption that the September 4, 1981 order of probation was, in fact, modified by an order entered on May 18, 1983 which did, in fact, require the petitioner "to pay 20% of all her future earnings toward restitution." We will view the case in accordance with the parties' assumption in determining whether petitioner was afforded due process in the proceeding at which her probation was revoked.

### C.

The record shows that the State's August 7, 1985 motion to revoke probation (Resp's Exh. T at 13), copy of which was incorporated in the order to show cause served on petitioner (Resp's Exh. T at 14), only gave petitioner notice that the State "moves the Court to revoke defendant's probation heretofore granted in this case for the reason that defendant has failed to abide by the terms of said probation *in that defendant has failed to make a good faith effort to pay restitution.*" (Emphasis added).

That notice obviously did not advise the petitioner that the State contended that she had allegedly "failed to make a good faith effort *to pay 20% of all future earnings towards restitution.*" (Emphasis added). Indeed, it must be noted that the State's August 7, 1985 motion to revoke probation (Resp's Exh. T at 14) was an exact copy of the State's earlier April 27, 1983 motion to revoke probation (Resp's Exh. T at 30). Petitioner's April 30, 1983 letter to the trial court to which earlier reference has been made illustrates the lack of notice petitioner was afforded by the order directing petitioner to make restitution in the amount of $3,935.23 for having entered a plea of guilty to forgery of a check in the amount of $454.62.

Petitioner advised the trial court in her April 30, 1983 letter that "I was never told I had any certain amount to pay a month" and that "no one ever demanded—asked for or hinted at payments. I'm sorry if I misunderstood but I thought I had four years to pay it in—I didn't know I had a specific amount to pay a month." Resp's Exh. T at 27 and 30.

The trial court's May 3, 1983 response to petitioner's letter stated that "I realize that the order did not say when you were to make this restitution." Resp's Exh. T at 23. The trial court stated that it recognized that in the absence of any provision in the order granting probation in regard to

---

**11.** The only possible support for the respondent's statement is an almost illegibly scrawled

entry on the docket sheet under the date of May 18, 1983. *See* Resp's Exh. T at 2.

whether petitioner was to make restitution on a schedule of periodic payments "it would be unrealistic to expect you to make it immediately, and it would also be unrealistic to expect you to have $3,935.23 at the end of your probationary period." *Id.* The trial court concluded, however, that "it was expected that you would be making payments all along in some amount or another" without stating any ground upon which that expectation was based. *Id.* We find that such an expectation was unreasonable.

We further find that had the petitioner been given adequate notice that the State was seeking to revoke the assumed modified May 18, 1983 order of probation, she would have reasonably expected that the State would adduce evidence of what money she may have, in fact, earned after May 18, 1983 together with evidence of whether she may have, in fact, failed to make a good faith effort to pay 20% of those earnings toward restitution. Under the circumstances, we must find that the petitioner was not given adequate notice of the claimed violations of her probation.

### D.

The six-page transcript of the August 30, 1985 proceeding at which petitioner's probation was revoked (Resp's Exh. C) was conducted in a manner consistent with the trial court's advice to the petitioner at the time probation was initially granted.[12] That transcript shows that the State called no witnesses and adduced no documentary evidence. Nor did petitioner's counsel.

Rather, that transcript shows that petitioner's counsel opened a colloquy with the trial court by stating that "this is a more different case in the sense that the motion for revocation is based on her failure to pay restitution." Resp's Exh. C at 2. The trial court responded by stating that in "May of '83 [she] was ordered to pay 20 percent of all future earnings to pay restitution, and then court costs." *Id.*

Petitioner's counsel advised the trial court that "[s]he's probably paid 20 percent of earnings" and that "I have medical records verification as recently as today from one of her doctors, and from a medical doctor, indicating that she is still not able to go to work." *Id.* Petitioner's counsel added in a gross understatement that "I frankly don't know what to do."[13]

The trial court then asked the prosecutor whether there was "anything you want to say?" *Id.* at 3. The colloquy between the trial court and counsel veered to how much restitution may have been paid. The prosecutor initially advised the trial court that his "file shows $34.00." *Id.* Petitioner's counsel stated that "I don't know the exact amount." *Id.* The trial court commented that "[i]t's very hard for me to believe that in four years she couldn't earn more than $34.00, or whatever it was, no matter how much sickness you have had."[14] *Id.*

When the petitioner protested that "I've paid more than that, your Honor" (*id.*), the prosecuting attorney said "Judge, in talking to Mr. Whitman, Miss Jackson has not been the most cooperative person over in Kansas for reporting."[15] *Id.* at 4. The trial court responded "I *notice* she has not, not worth a darn."[16] (Emphasis added). *Id.*

---

**12.** As noted above, the trial court advised the petitioner at the close of the September 4, 1981 sentencing proceeding that "I won't fool around very long about revoking your probation." Resp's Exh. U at 5.

**13.** It is obvious that petitioner's counsel did not "know what to do." He should have advised the trial court that the notice served on the petitioner was constitutionally inadequate and that, in any event, the State had the burden of establishing that petitioner had, in fact, been able to work and that she had, in fact, failed to make a good faith effort to pay 20% of her earnings towards restitution.

**14.** Petitioner's counsel had advised the trial court that the petitioner "has had miscarriages, has had blood clotting problems" and that she has "four children, one of whom is approximately 30 days old, and ranging up to the age of 12. She lives with her parents." *Id.* at 2.

**15.** The record does not show who "Mr. Whitman" may have been or why he was in the courtroom.

**16.** The record does not show what, if any, document the trial court may have taken "notice." The record does show that when the petitioner protested that she had difficulty meeting with her supervising Kansas probation officer be-

The transcript shows that the prosecuting attorney left the courtroom "to make a call" and after returning, advised the trial court that the defendant had paid $375.00 toward restitution rather than $34.00, as he had earlier advised the trial court. *Id.* The trial court commented "that's not very much in four years." *Id.* The trial court then made inquiry of the prosecuting attorney whether he wanted "to examine her or anything about these sicknesses and so forth?" *Id.* at 4–5. The transcript shows the following:

> MR MARQUART: I know that she has had medical problems, your Honor. We were here earlier this year concerning that, and she gave us medical authorizations.[17] I think that the papers that Mr. Scroggins had concerning her medical problems were acquired pursuant to these authorizations. She has had medical problems, but I don't see that as an excuse for non-payment of restitution.
> THE DEFENDANT: I just haven't been able to work. If I could go back to work, I'll pay it.
> THE COURT: Well, she has credit for 139 days that she spent in jail on a two-year prison sentence, so the choices are to either just forget it or send her down to the penitentiary.

*Id.* at 5.

No factual inquiry whatsoever was made in regard to the petitioner's statement that "I just haven't been able to work." For the State adduced no evidence at all at the "hearing." The prosecutor simply advised the trial court "I really don't think that the state is going to get restitution in these cases for these victims, so the penitentiary sentence seems to be the thing to do." *Id.* The trial court obviously agreed.

The last page of the transcript shows that the trial court stated that while it was aware of the fact that the petitioner "has had problems, ... the Court is unable to believe that she couldn't find some way to pay more money than that in four years' time." *Id.* at 6. The trial court accordingly stated that "[t]he Court finds that the defendant has paid only ... $375.00 on $3900.00 plus court costs, plus the Public Defender's judgment, plus the $26.00 Victim's Compensation Fund" and "[t]he Court finds that she has not made a good faith effort probation is revoked."[18] *Id.*

### E.

The trial court entered its order revoking probation on September 1, 1985. Resp's Exh. N. That order erroneously recited that it was entered "after evidence being heard" at the August 30, 1985 proceeding. *Id.* at 1. For no evidence was, in fact, adduced at the proceeding. That order made no reference whatsoever to petitioner's alleged failure to pay 20% of her future earnings toward restitution. Rather, that order simply stated in conclusory language that probation was revoked for the reason the petitioner "failed to make a good faith effort to pay restitution, court costs, and jail board." *Id.* Of paramount

---

cause "I don't have a car," the trial court stated "I think you are the type of person—I hate to say it—that has an excuse for everything. I made a mistake of ever putting you on probation in the first place and should have just let you do your time and save everybody a lot of trouble." *Id.*

17. The prosecutor's statement that "[w]e were here earlier this year" was apparently a reference to a motion to revoke probation filed January 18, 1985. The docket sheet suggests that such a motion was filed. Resp's Exh. T at 2. A January 30, 1985 docket sheet entry, however, indicates that the motion was "taken under advisement" and never ruled. *Id.*

18. The trial court stayed execution of the petitioner's two-year sentence until September 16, 1985. The *pro se* traverse filed on October 20,

1988 by the petitioner (Doc. 7 in this Court's file) concedes that she did fail to appear on that date. That traverse also recognized that she was being held in custody under both the order revoking probation entered in Case No. CR680–258FX and also under a commitment to await trial on a failure of bailee to appear charge filed in Case No. 688–42FX on February 2, 1986. *See* Resp's Exh. K. She contended, however, that the 1986 case was filed, at least in part, in retaliation for her refusal to enter a plea of guilty in still another criminal case that was subsequently dismissed. The validity of petitioner's custody under the commitment issued in Case No. 688–42FX is not presently before this Court. An order will be entered to determine whether it should be.

importance, the record shows that the revocation court never filed a written statement of the evidence or the reasons upon which it relied when petitioner's probation was revoked.

Consistent with the admission of the respondent in his supplemental response (paragraph 5, page 7) and based on our independent review of the record, we find that the trial judge did not, either in its September 1, 1985 order revoking probation or elsewhere, prepare and file a written statement as to the evidence relied on or state the reasons for its action in revoking petitioner's probation.

V

Application of the constitutional standard discussed in part III above to the facts stated in part IV requires that we find and conclude that the petitioner is entitled to habeas corpus relief for the reason she was denied the minimum requirements of due process in the proceeding revoking her probation in that (1) she was not given appropriate written notice of the claimed violations of probation, (2) no evidence of any claimed violation was adduced at the revocation proceeding, and (3) the trial judge failed to prepare and file a written statement of the evidence upon which the probation revocation was allegedly based and further failed to state in writing any of the reasons that it may have relied on for entering the revocation order. Petitioner is therefore entitled to appropriate habeas corpus relief.

VI

28 U.S.C. § 2243 provides that after hearing and determining the facts, a federal court that entertains an application for habeas corpus shall "dispose of the matter as law and justice require." We have directed attention to the complication created by the fact that petitioner is presently being held in custody under two separate orders, the September 1, 1985 revocation order entered in Case No. 680–258FX and the February 2, 1986 commitment order to await trial in Case No. 688–42FX. The record in this case establishes that the two cases may be quite closely related. The record, however, does not reflect what proceedings, if any, may have been conducted in Case No. 688–42FX since the commitment order was entered February 2, 1986.

More important, it is entirely possible that the State may in the exercise of prosecutorial discretion conclude, in light of the habeas corpus relief that will be granted in regard to petitioner's probation revocation, that it no longer wishes to prosecute Case No. 688–42FX. If the State should elect to do so, the validity of the State's custody under the February 2, 1986 commitment to await trial would be mooted.

Considerations of comity suggest that the State be afforded the opportunity to state its position in regard to whether it wishes to attempt to maintain custody under the February 2, 1986 commitment order. While an order will be entered granting the petition for habeas corpus, further orders will be entered that will stay the execution of the writ until after the State has stated whether it intends to prosecute Case No. 688–42FX.

For the reasons stated, it is

ORDERED (1) that the petition for habeas corpus should be and the same is hereby granted. It is further

ORDERED (2) that issuance of a writ of habeas corpus shall be stayed until further order of the Court. It is further

ORDERED (3) that the respondent shall on or before April 20, 1989, prepare, serve, and file a response to this order in which it shall be stated (1) whether the respondent will attempt to maintain custody of the petitioner under the February 2, 1986 commitment to await trial on the failure to appear charge in Case No. 688–42FX or (2) whether the Prosecuting Attorney of Buchanan County, Missouri, in the exercise of prosecutorial discretion vested in him by law, has elected to dismiss Case No. 688–42FX. It is further

ORDERED (4) that if the answer to the first question stated in Order (3) is in the affirmative, the response shall include an appropriate statement and shall attach all necessary exhibits which will show cause

and establish the validity of respondent's custody of petitioner under the February 2, 1986 commitment to await trial on the failure to appear charge in Case No. 688–42FX. It is further

ORDERED (5) that after this Court has considered the response filed pursuant to Order (3) further orders will be entered as may be appropriate.